IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| MI WINDOWS & DOORS, INC. | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Civil Action No. 07-1233 |
|  | ) |  |
| SOUTHEASTERN FREIGHT LINES, INC. | ) |  |
|  | ) |  |
| Defendant. | ) |  |

MEMORANDUM

Gary L. Lancaster,
Chief Judge.                                June 2, 2010

This is an action for declaratory judgment and breach of contract. Plaintiff, MI Windows & Doors, Inc. ("MIWD"), alleges that defendant, Southeastern Freight Lines, Inc. ("Southeastern") is contractually obligated to indemnify it in relation to a personal injury claim brought against MIWD by a Southeastern employee in Alabama. The Alabama action related to an injury that a Southeastern employee sustained while unloading a truck containing MIWD products. MIWD alleges that the Confidential Transportation Agreement (the "Agreement") obligates Southeastern to indemnify MIWD for defense costs and settlement payments in the Alabama action [doc. no. 34].

MIWD has filed a motion for partial summary judgment pursuant to Fed. R. Civ. P. 56 contending that Southeastern owed a duty to defend, indemnify, and hold harmless MIWD in connection with the Alabama litigation [doc. no. 59]. Southeastern has filed a motion for summary judgment contending that: (1) MIWD was not a party to the Agreement, and even if it was; (2) MIWD's claims are

barred by the Pennsylvania Workmen's Compensation Act, 42 Cons. Stat. § 481, et seq. [doc. no. 63].

For the reasons that follow, we will grant MIWD's motion for partial summary judgment and will deny Southeastern's motion. The remaining issue for trial will be to apportion negligence between MIWD and Southeastern.

I. BACKGROUND

Unless otherwise specifically indicated, the following material facts are undisputed. Some additional facts are discussed in context.

A. The Parties

MIWD manufactures windows and doors in Pennsylvania and across the country. It has a manufacturing facility located in Smyrna, Tennessee. MIWD used to be called "MI Home Products, Inc.," which purchased the Smyrna facility from another window and door manufacturer, "Better Bilt," in 1999.

Southeastern is a trucking company that operates more than seventy truck terminals or service centers. Southeastern operates a service center near Nashville, Tennessee, approximately ten miles from the MIWD Smyrna manufacturing facility.

Southeastern began transporting windows and doors for MIWD more than a decade ago. Eventually, MIWD became one of the largest customers of Southeastern's Nashville service center.

B. <u>The Alabama Litigation</u>

The instant dispute stems from litigation that was originally filed in Jefferson County, Alabama in April 2006, and then removed to the United States District Court for the Northern District of Alabama. In the Alabama action, a former Southeastern employee, John A. Franks ("Franks"), filed suit against MIWD, alleging that MIWD negligently and/or wantonly failed to properly package and load sliding glass doors for shipment on a trailer to be carried by Southeastern. Franks had been severely and permanently injured in June 2005 while unloading MIWD's sliding glass doors from a Southeastern trailer in Birmingham, Alabama. Although Southeastern was not a named party in the Alabama action, Southeastern intervened to protect its workmen's compensation lien based upon benefits it had paid to Franks.

More than a year after Franks filed the Alabama action, MIWD tendered a claim for contractual indemnity and defense to Southeastern by letter dated June 19, 2007 [doc. no. 34, at Ex. C]. Southeastern rejected MIWD's tender by letter dated June 28, 2007 [<u>id</u>. at Ex. D]. In that letter, Southeastern refused to indemnify MIWD because the Alabama action "consist[s] solely of allegations pertaining to MIWD's own negligence." Southeastern included a detailed analysis of sections 10 and 9.a. of the Agreement to support its conclusion that because Franks was accusing MIWD of negligence in the Alabama action, the indemnity provisions of the

Agreement were not invoked. Notably, Southeastern stated that "[MIWD's] current interpretation of the 'Confidential Transportation Agreement' between Southeastern and MIWD, which appears to be of recent vintage, ignores certain provisions and takes other provisions completely out of context." Southeastern did not deny indemnification on the ground that MIWD was not a party to "the 'Confidential Transportation Agreement' between Southeastern and MIWD" as it does now.

MIWD thereafter chose to settle Franks's claim against it for a significant but confidential amount of money. Before doing so, however, MIWD filed this action against Southeastern, alleging that Southeastern had expressly agreed to defend, indemnify, and hold harmless MIWD against suits brought by Southeastern employees, except to the extent of MIWD's own negligence, under the Agreement. Southeastern now argues that MIWD was not a party to the Agreement and alternatively, that Southeastern is protected from any such liability under Pennsylvania's Workmen's Compensation Act.

C. <u>The Agreement</u>

1. Background

Prior to 2001, Southeastern carried only a small amount of freight for MIWD's facility in Smyrna, Tennessee. When Home Depot, a mutual customer of MIWD and Southeastern, changed to a night delivery program in 2001, Southeastern began carrying large amounts of windows and doors from MIWD's Smyrna facility. Around

4

this same time, negotiations regarding the Agreement began, although it was not executed until 2004.

   2. Disputed Provisions

The interpretation of certain provisions of the Agreement regarding indemnity and defense are at issue in this matter. The resolution of these disputes depends upon whether the Agreement applies to MIWD.

   a. MIWD Coverage Under the Agreement

According to Southeastern, it began discussions in 2001 with MI Transportation, Inc. ("MIT"), not MIWD, regarding the Agreement. In support of its position, Southeastern points to, inter alia, the opening paragraph of the Agreement, titled "Parties", which states that the Agreement is "by and between: <u>MI Transportation, Inc.</u>,...(hereinafter called 'SHIPPER') and <u>Southeastern Freight Lines, Inc.</u>,...(hereinafter called 'CARRIER'). The Agreement was executed in September of 2004 by Patricia Sitlinger on behalf of MIT, and in March of 2004 by Robert Lyons on behalf of Southeastern.

MIWD does not dispute that MIT and MIWD are separate legal entities. However, according to MIWD, the Agreement applies to MIT, as well as MIT's divisions and related affiliates, via section 16 of the Agreement, which explicitly incorporates Appendix D into the Agreement [<u>id.</u> at Ex. A, § 16 ("Attached hereto and expressly made a part hereof are various Appendices.")]. Appendix

5

D lists several affiliates and divisions of MIT, including "Better Bilt" and "MI Home Products", predecessors to MIWD.

Moreover, MIWD contends that the plain language of section 6.a.v. assures MIWD the same rights as MIT under the Agreement. However, Southeastern argues that this section only applies to compensation and payment provisions. Section 6.a.v. states:

> 6. Compensation and Payment
> a. Rates and Charges
> v. Shipper' [sic] Affiliates
> The provisions of this Agreement shall ensure [sic] to the benefit of SHIPPER, DIVISIONS, and related AFFILIATES, all of which are listed in Appendix D hereto.

b. Section 10 - Indemnification

Section 10 of the Agreement provides:

> 10. Indemnity
>
> Except to the extent of Shipper's [sic] negligence, CARRIER shall at all times, indemnify, defend, and hold harmless SHIPPER, its agents, and employees against and from any and all claims arising from the services provided hereunder (including, without limitation, claims for personal injury, death and damage to property, clean-up costs from commodity spills and damage to the environment, whether or not caused by SHIPPER'S packaging, loading or other acts) asserted against SHIPPER (a) by any agent or employee of CARRIER or (b) by any other person. The provisions of this Paragraph shall survive cancellation, termination or expiration of this Agreement.

It is MIWD's position that section 10 required Southeastern to indemnify, defend, and hold harmless MIWD in the Franks litigation, except to the extent of MIWD's negligence, if

6

any [doc. no. 60, at p. 18 ("MIWD is not seeking indemnification for its own negligence.")].

Southeastern contends that section 10 applies only to MIT, not MIWD, and even if it did apply to MIWD, Southeastern did not waive its protection under Pennsylvania's Workmen's Compensation Act which bars MIWD's claims here. Southeastern contends, and MIWD does not dispute, that section 10 does not purport to indemnify MIWD for its own negligence.

II. STANDARD OF REVIEW

Summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2).

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment or partial motion for summary judgment. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, i.e., the material facts, however, will preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Similarly, summary judgment is improper so long as the dispute over the material facts is

genuine. Id. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 248-49.

The United States Supreme Court has "emphasized, [w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (internal quotations omitted) (quoting Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

In summary, the inquiry on a Rule 56 motion is whether the evidence of record presents a genuine dispute over material facts so as to require submission of the matter to a jury for resolution of that factual dispute, or whether the evidence is so one-sided that the movant must prevail as a matter of law.

It is on this standard that the court has reviewed MIWD's and Southeastern's cross-motions for summary judgment. Based on the pleadings of record and the briefs filed in support and opposition thereto, the court will grant MIWD's partial motion [doc. no. 59] and will deny Southeastern's motion [doc. no. 63].

III. DISCUSSION

The cross-motions for summary judgment require determinations of the interpretation and construction of certain provisions of the Agreement. These are matters to be decided by the court. Sanford Inv. Co., Inc. v. Ahlstrom Machinery Holdings, Inc., 198 F.3d 415, 421 (3d Cir. 1999); Mellon Bank, N.A. v. Aetna Business Credit, Inc., 619 F.2d 1001, 1011 (3d Cir. 1980). We are able to make these determinations at the summary judgment stage because the contract is clear and unambiguous, and there are no material issues of fact in dispute with respect to: (1) whether the Agreement applied to MIWD, and (2) whether Southeastern waived its rights under the Pennsylvania Workmen's Compensation Act in the Agreement.

A. The Agreement Applies to MIWD

It is undisputed that Pennsylvania law governs the interpretation and construction of the Agreement [doc. no. 34, Ex. A, § 17]. In Pennsylvania, contracts must be interpreted to give effect to the intent of the contracting parties. See, Hutchison v. Sunbeam Coal Corp., 519 A.2d 385, 389 (Pa. 1986). "[W]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone." Steuart v. McChesney, 444 A.2d 659, 661 (Pa. 1982) (quoting E. Crossroads Center, Inc. v. Mellon-Stuart Co., 205 A.2d 865, 866 (Pa. 1965)). A contract is clear or unambiguous "if the court can determine its meaning without any

guide other than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends; and a contract is not rendered ambiguous by the mere fact that the parties do not agree on the proper construction." Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 93 (3d Cir. 2001) (citations omitted).

In making the determination as to whether a contract is ambiguous, a court should consider all language within the contract as a whole. See, e.g., Capitol Bus Co. v. Blue Bird Coach Lines, Inc., 478 F.2d 556, 560 (3d Cir. 1973). A court should interpret a contract "so as to give effect to its general purpose." Id. In addition, a court should avoid interpreting a contract so as to make any of its provisions unworkable or void. See, First Philadelphia Realty Corp. v. Albany Savs. Bank, 609 F. Supp. 207, 210 (E.D. Pa. 1985) (observing that contracts should not be construed as to make any provision of the contract meaningless) (citation omitted).

Upon review of the Agreement as a whole, the court finds that the Agreement is clear and unambiguous in its application to MIWD. There is no dispute that the Agreement identifies MIT and Southeastern as the "Parties." According to Southeastern, this ends the inquiry as to whether the Agreement applies to MIWD. We disagree.

Section 16 of the Agreement explicitly provides that all appendices to the Agreement are expressly made part of the Agreement. Appendix D contains a list divisions and affiliates of MIT, two of which, Better Bilt and MI Home Products, are predecessors to MIWD. The fact that MIWD is not specifically listed in Appendix D or elsewhere in the Agreement is of no significance. Southeastern does not dispute that MI Home Products purchased Better Bilt or that MI Home Products changed its name to MIWD. Given the undisputed relationship between Better Bilt, MI Home Products, and MIWD, we find that MIWD is included in Appendix D. Because Appendix D is expressly incorporated into the Agreement via section 16, we also find that the Agreement applies to MIWD.

Section 6.a.v. of the Agreement further supports our conclusion. That section provides that "The provisions of this Agreement shall ensure [sic] to the benefit of SHIPPER, DIVISIONS, and related AFFILIATES, all of which are listed in Appendix D hereto." As we have already determined that MIWD is identified by reference to its predecessors in Appendix D, we find that all the provisions of the Agreement equally apply to MIWD.

We reject Southeastern's argument that section 6.a.v. only relates to the pricing provisions in the Agreement because it falls under the heading "Compensation and Payment", and the sub-heading "Rates and Charges." Such an interpretation is contrary to

the clear language of the Agreement and fails to take into account the entirety of the contract and its general purpose.

Section 6.a.v. does not indicate by its own language that it applies only to provisions contained within section 6 of the Agreement, or only to pricing provisions. Rather, it makes all the provisions in the Agreement applicable to all companies identified in Appendix D. By contrast, section 6.b.v., which falls under the same heading, provides, in part, that "<u>the rules, rates, and charges</u> in this Agreement will apply to the exclusion of all other rules, rates and charges published...." (emphasis added). The language and structure of the Agreement indicate that the headings are not controlling and that the phrase, "provisions of this Agreement" is broader than "the rules, rates, and charges published" in the Agreement. The court will not interpret the Agreement so as to render section 6.a.v. meaningless or to limit its scope in contravention of the plain language of the Agreement. <u>See</u>, <u>Girard Trust Bank v. Life Ins. Co. of N. Am.</u>, 364 A.2d 495, 498 (Pa. Super. Ct. 1976).

Moreover, Southeastern's interpretation of the Agreement contradicts the general purpose of the shipping agreement as expressed therein, <u>i.e.</u>, to provide for the transportation and shipment of MIT's and its divisions' and affiliates' goods. If the parties intended that the Agreement apply only to shipments originating from MIT, then Appendix D would not have been attached

12

to the Agreement. Such an interpretation would render the Agreement almost meaningless and contradict the intention of the parties.

Where the intention of the parties is clear, as it is in this case, there is no need to resort to extrinsic aids or evidence. E. Crossroads Center, 205 A.2d at 866. A reading of the entire contract permits no reasonable interpretation other than the one set forth above regarding this issue. Because "[t]he provisions of the Agreement...ensure [sic] to the benefit of [those companies] listed in Appendix D," and it is undisputed that MI Home Products and Better Bilt, both of which are listed in Appendix D, are predecessors of MIWD, the provisions of the Agreement apply to MIWD.

Because we find that the Agreement applies to MIWD, it follows that, under section 10, Southeastern owed a duty to defend, indemnify, and hold harmless MIWD against Franks's claims in the Alabama action except to the extent, if any, that MIWD's own negligence, including negligent packaging, caused or contributed to Franks's injuries. What portion, if any, of Franks's injuries was caused by the negligence of MIWD, and what portion, if any, of Franks's injuries was caused by the negligence of Southeastern, is a question of fact that remains for the jury to decide.

B.   Southeastern's Waiver of Workmen's Compensation Immunity

Assuming the Agreement applies to MIWD, Southeastern has argued alternatively that the Pennsylvania Workmen's Compensation

13

Act bars MIWD's claims under the Agreement. MIWD counters that Southeastern waived its Workmen's Compensation Act immunity.

1. Pennsylvania's Workmen's Compensation Act

Pennsylvania's Workmen's Compensation Act provides that the liability imposed thereunder is "exclusive and in place of any and all other liabilities to" an employee. 77 Pa. Cons. Stat. § 481(a). The Act also provides an employer with immunity from suit for accidents within the scope of employment, and it bars an employer from being joined in a suit against a third party arising out of such an incident. Clark v. Willamette Industries, Inc., 918 F. Supp. 139, 141 (W.D. Pa. 1996) (finding no waiver). It likewise bars a third party from seeking "contribution or indemnification from the employer, even though the employer's negligence may have been the primary cause of the injury." Kennedy v. Shuwa Invs. Corp., 825 F. Supp. 712, 713 (E.D. Pa. 1993) (barring third party indemnity action). In short, under Pennsylvania law, if an employee is injured on the job, his sole recourse against his employer is workmen's compensation benefits, not a civil suit for damages.

Specifically, Pennsylvania's Workmen's Compensation Act provides, in relevant part,

> In the event injury or death to an employe[e] is caused by a third party, then such employe[e]...may bring their action at law against such third party, but the employer...shall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise, <u>unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract</u>....

14

77 Pa. Const. Stat. § 481(b) (emphasis added).

To waive immunity under the Act, "[t]he parties must specifically utilize language which indicates that the employer/alleged indemnitor intends to indemnify the third party against claims by employees of the alleged indemnitor; this must clearly appear from the terms of the agreement." Snare v. Ebensburg Power, Co., 637 A.2d 296, 298 (Pa. Super. Ct. 1993). "While an employer need not expressly waive Workmen's Compensation immunity, the intent to indemnify against claims by employees of the alleged indemnitor must clearly appear from the terms of the agreement." Gulf Interstate Field Servs., Inc. v. Henkels & McCoy, Inc., No. 98-651, 1998 WL 181935, at *2 (E.D. Pa. Apr. 17, 1998) (citation omitted). "General indemnity language is insufficient." Id. Rather, the waiver must be clear and show an intent to indemnify "in the event of either the indemnitee's or the employer's own negligence." Bester v. Essex Crane Rental Corp., 619 A.2d 304, 307 (Pa. Super. Ct. 1993) (affirming granting of preliminary objections finding no waiver of the Act) (emphasis added); see also Kiewit E. Co., Inc. v. L&R Constr. Co., Inc., 44 F.3d 1194, 1199 (3d Cir. 1995) (requiring indemnification because of clear and unequivocal language).

    2.   Southeastern Waived Immunity Under the Act

Here, section 10 of the Agreement addresses indemnity. It provides, in relevant part,

15

> Except to the extent of Shipper's [sic] negligence, CARRIER shall at all times, indemnify, defend, and hold harmless SHIPPER...against and from any and all claims arising from the services provided hereunder (including, without limitation, claims for personal injury...whether or not caused by SHIPPER'S packaging, loading or other acts) asserted against SHIPPER (a) by any agent or employee of CARRIER....

By this language, Southeastern specifically agreed to indemnify the shipper, MIWD, for liability arising from "personal injury" suffered by "an agent or employee" of Southeastern, except to the extent of MIWD's own negligence. This language is in accord with section 9.a., which states that "CARRIER [Southeastern] will hold harmless and indemnify SHIPPER [MIWD] for any claim for insurance premium or any claim by any employee of CARRIER [Southeastern] sustained in the ordinary course of business...."

We find that the language in sections 9.a. and 10, which explicitly applies claims brought by Southeastern employees, satisfies the requirement of Pennsylvania law that "the intent to indemnify against claims by employees of the alleged indemnitor must clearly appear from the terms of the agreement." Gulf Interstate, Snare, supra.

The fact that MIWD is not explicitly "named" in section 10 is irrelevant to our analysis. "Third Circuit caselaw does not require that an indemnification clause actually include the proper name of a party in order to be applied to that party." Muth v. Rondel at Atlas Terrace, LLC, No. 08-0476, 2009 WL 50173, at *2 n.3 (E.D. Pa. Jan. 8, 2009) (citing Kiewit, 44 F.3d at 1201)

16

(construing an indemnification clause to require the subcontractor employer, L&R Construction, to indemnify the general contractor, Kiewit/Perini, when the parties were identified only as "Subcontractor" and "Contractor" in the contract).

Here, we have already found that the Agreement included MIWD and its predecessors, MI Home Products and Better Bilt. The requirements for waiver under the Pennsylvania Workmen's Compensation Act have been met, and the indemnity provision is enforceable against Southeastern. See, Hackman v. Moyer Packing, 621 A.2d 166, 168 (Pa. Super. Ct. 1993) (finding that trial court did not err in concluding that the indemnity agreement was enforceable).

Based on the foregoing, we find that, except to the extent of MIWD's negligence, Southeastern had a duty to defend, indemnify, and hold harmless MIWD from all personal injury claims by an employee of Southeastern arising from services performed under the Agreement [doc. no. 34, at Ex. A, § 10; see also doc. no. 60, at p. 14].

IV. CONCLUSION

For the reasons set forth above, MIWD's motion for partial summary judgment will be granted, and Southeastern's motion for summary judgment will be denied.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MI WINDOWS & DOORS, INC.          )
                                  )
        Plaintiff,                )
                                  )
    v.                            )     Civil Action No. 07-1233
                                  )
SOUTHEASTERN FREIGHT LINES, INC.  )
                                  )
        Defendant.                )

ORDER

On this 2nd day of June, 2010, IT IS HEREBY ORDERED that plaintiff's motion for partial summary judgment [doc. no. 59] is GRANTED. It is further ordered that defendant's motion for summary judgment [doc. no. 63] is DENIED without prejudice.

Oral argument scheduled for June 15, 2010 is canceled. Instead, the parties are directed to appear on June 15, 2010 at 2:00 p.m. for a status conference. The status conference already scheduled for June 25th is canceled.

BY THE COURT:

_____, C.J.

cc:    All Counsel of Record